1
2
3
4
5
6
7                          IN THE UNITED STATES DISTRICT COURT
8                        FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10   SUZANNE VINAL,                              No. C -11-03242-EDL
11                     Plaintiff,                **ORDER GRANTING MOTION TO
                                                 DISMISS WITH PREJUDICE; DENYING**
12        v.                                     **MOTION TO STRIKE AS MOOT**
13   WELLS FARGO BANK, N.A., et al.,
14                     Defendants.
15   _____/
16        This is a motion to dismiss and motion to strike portions of a complaint alleging various

17   improprieties in connection with the servicing of a mortgage transaction.  For the following reasons,

18   the motion to dismiss is GRANTED WITH PREJUDICE because each of Plaintiff's claims is

19   preempted by the Home Owners Loan Act and its implementing Office of Thrift Supervision

20   regulations.  The motion to strike is DENIED AS MOOT.

21   **I.      Procedural Background**

22        Plaintiff Suzanne Vinal filed this mortgage case against Wells Fargo Bank, N.A., Wachovia

23   Mortgage Corporation, and Old Republic Title Company in San Mateo Superior Court in April

24   2011.  The complaint makes claims for breach of contract, negligence, negligent misrepresentation,

25   and violation of California Business & Professions Code section 17200.  Wells Fargo and Wachovia

26   (collectively "Defendants") removed the action to this Court in June 2011 based on both federal

27   question and diversity jurisdiction.  Plaintiff, Wells Fargo, and Wachovia have consented to this

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Court's jurisdiction.[1]  Defendants have filed a motion to dismiss each of Plaintiff's claims with

2  prejudice due to preemption, failure to tender, and pleading defects, as well as a motion to strike the

3  prayer for punitive damages.

4  **II. Factual Background**

5       In October 2007, Plaintiff purchased property and obtained a $310,000 loan from Wells

6  Fargo's predecessor, World Savings Bank, FSB, secured by a deed of trust.  Compl. ¶ 18; Def.'s

7  RJN Ex. A (Deed of Trust).  Plaintiff made monthly payments until July 2010, when she exhausted

8  her savings and could no longer make payments. Compl. ¶ 18.  Plaintiff has been in default since

9  June 15, 2010.  RJN Ex. B (Notice of Default and Election to Sell).  Plaintiff alleges that in March

10 2010, she contacted Wachovia and requested mortgage assistance but Wachovia told her there was

11 nothing it could do because Plaintiff was current on her payments and was receiving unemployment

12 benefits, and to call back when she was delinquent.  Compl. ¶ 19.  Plaintiff again requested

13 mortgage assistance after she became re-employed in August 2010, and was denied.  Compl. ¶ 20.

14 On October 25, 2010, Cal-Western Reconveyance Corporation ("Cal Western") was substituted as

15 trustee under the deed of trust. RJN Exh. C (Substitution of Trustee).  On January 27, 2011, Cal-

16 Western recorded a Notice of Trustee Sale, noticing a sale date of February 16, 2011.  RJN Exh. D

17 (Notice of Trustee Sale).  From January to March 2011, Plaintiff claims that Wachovia asked her to

18 send the same documents to its Loss Mitigation Department multiple times.  Compl. ¶ 22.  In March

19 2011, Wachovia told Plaintiff that it would consider her for a Home Affordable Modification

20 Program ("HAMP") modification if she paid a lump sum of $8,000.  Compl. ¶ 21.  Instead, Plaintiff

21 hired counsel to assist her and ultimately filed this complaint.  Id.

22

23       [1]Old Republic Title Company did not join in the removal or the motion to dismiss and has not
    otherwise appeared in this action or consented to magistrate court jurisdiction.  There is no indication
24  that Old Republic has been served.  In the Notice of Removal, Wells Fargo and Wachovia contend that
    Old Republic's citizenship should be disregarded because it is not a properly named party and has no
25  relationship to Plaintiff or this case other than as Trustee.  See Notice of Removal at 5.  Plaintiff has not
    challenged this argument, moved to remand, or otherwise addressed the propriety of Old Republic as
26  a defendant.  The only claim brought against Old Republic is a California state law claim for violation
    of California Business & Professions Code section 17200.  Because all of Plaintiff's other claims fail
27  as a matter of law and the Court lacks independent jurisdiction over this claim, the claim against Old
    Republic must be dismissed as well. Because there is no indication that Old Republic has been served,
28  the Court does not need its consent to dismiss the claim against it.  Because all claims against all
    defendants are dismissed, this Order terminates this civil case.

2

Plaintiff's complaint relies heavily on Wells Fargo's Servicer Participation Agreement ("SPA") with the U.S. Treasury Department to provide HAMP loan modifications in return for receiving Troubled Asset Relief Program ("TARP") funds.  Compl. ¶ 12-16, Ex. A.  She claims that the SPA requires Wells Fargo to evaluate all loans which are 60 days delinquent or appear to be in imminent default and determine which loans meet the HAMP eligibility criteria by: (1) gathering information and, if appropriate, offering the homeowner a Trial Period Plan ("TPP"); and (2) offering a permanent modification.  Compl. ¶ 15.  She claims that she is a third-party beneficiary of the SPA entitled to sue for breach of contract because Defendants refused to review her for mortgage relief, required an $8,000 payment to conduct a review, and did not grant her a TPP.  Compl. ¶¶ 27-28.  She further alleges negligence and negligent misrepresentation on the basis that Defendants breached a duty to provide a HAMP review (Compl. ¶¶ 31-38) as well as a violation of California Business & Professions Code section 17200.  Compl. ¶ 42.

### III. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed because of a "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted  as true and construed in the light most favorable to the plaintiff."  Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). A court need not accept as true the complaint's "legal conclusions."  Iqbal, 129 S. Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be supported

by factual allegations." <u>Id.</u> at 1950. Thus, a reviewing court may begin "by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to

an entitlement of relief." <u>Id.</u> Though the plausibility inquiry "is not akin to a probability

requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not

permit the court to infer more than the mere possibility of misconduct . . . ." <u>Id.</u> at 1949 (internal

quotation marks omitted), 1950. That is to say, plaintiffs must "nudge[] their claims across the line

from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

**IV.**    **Analysis**

> **1.**    **The Complaint Fails Because the Claims are Preempted By the Home Owners Loan Act**

Defendants argue that federal law, in particular the Home Owners Loan Act ("HOLA") and

its implementing Office of Thrift Supervision ("OTS") regulations, completely preempt Plaintiffs'

claims. Defendants assert that, at the time Plaintiff entered into her loan, World Savings Bank was a

federal savings bank organized under HOLA and regulated by OTS. RJN Exs. E-H. World Savings

Bank changed its name to Wachovia Mortgage on January 1, 2008 and was merged into Wells Fargo

Bank, N.A. in November 2009, but it remained chartered under the HOLA and overseen by the

OTS. RJN Ex. H-L. HOLA applies even though Wachovia is no longer a federal savings bank.

<u>DeLeon v. Wells Fargo Bank</u>, 729 F. Supp. 2d 1119 (N.D. Cal. June 9, 2010) (Fogel, J) ("Wells

Fargo notes that at the time the loan was made to the DeLeons, 'World Savings Bank, FSB was a

federally chartered savings bank organized and operating under HOLA' and observes correctly that

the same preemption analysis would apply to any alleged conduct after November 1, 2009, when the

lender merged into a national banking association.").

Defendant relies on 12 C.F.R. § 560.2 in support of its argument that the OTS regulations

make clear that state laws do not apply to the lending practices of federal banks and thrifts. That

regulation provides:

> Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. §§1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the

**United States District Court**
For the Northern District of California

4

safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.

12 C.F.R. § 560.2(a). The types of state laws that are preempted by this section include, without limitation, state laws purporting to impose requirements regarding, for example: "The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan," and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." Id. § 560.2(b).

Paragraph (c) of § 560.2, in turn, states: "State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section: (1) Contract and commercial law; (2) Real property law; . . . (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section."

OTS has interpreted the regulation as follows:

When confronted with interpretive questions under § 560.2, we anticipate that courts will, in accordance with well established principles of regulatory construction, look to the regulatory history of § 560.2 for guidance. In this regard, OTS wishes to make clear that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations. When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph

United States District Court
For the Northern District of California

1        (b), the next question is whether the law affects lending. If it does, then, in
2    accordance with paragraph (a), the presumption arises that the law is preempted.
     This presumption can be reversed only if the law can clearly be shown to fit within
3    the confines of paragraph (c). For these purposes, paragraph (c) is intended to be
     interpreted narrowly. Any doubt should be resolved in favor of preemption.

4    61 Fed. Reg. 50951, 50966-50967 (Sept. 30, 1996); Silvas v. E*Trade Mortgage Corp., 514

5    F.3d 1001, 1005 (9th Cir. 2008) (setting forth two step analysis) (quoting 61 Fed. Reg.

6    50951, 50966-67).  HOLA and its agency regulations have been described as a "radical and

7    comprehensive response to the inadequacies of the existing state system," and "so

8    pervasive as to leave no room for state regulatory control."  Silvas, 514 F.3d at 1004-05

9    (quoting Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1257, 1260 (9th

10   Cir.1979), aff'd, 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754).

11       Each of Plaintiff's state law claims are based on an alleged failure to provide a loan

12   modification or foreclosure alternatives and thus relate to "terms of credit" or "processing,

13   origination, servicing . . . of . . .mortgages" and are therefore preempted.  See, e.g., Biggins

14   v. Wells Fargo & Co., 266 F.R.D. 399, 417 (N.D. Cal. 2009) (claim based on failure to

15   modify preempted); Guerrero v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 96261,

16   *4-6 (C.D.Cal. Sept. 14, 2010); Zerif v. Wachovia Mortgage Corp., 2011 U.S. Dist. LEXIS

17   29867, *8 (S.D.Cal. Mar. 23, 2011).  Plaintiff's opposition does not address these

18   mortgage-specific cases holding that claims like Plaintiff's are preempted by HOLA, or the

19   Ninth Circuit's guidance in Silvas in particular, and instead simply notes that some

20   California cases have upheld state actions that do not specifically conflict with federal

21   regulations.  However, the cases Plaintiff cites pre-date Silvas or do not relate to lending

22   standards and are therefore not persuasive.  Plaintiff does not argue that her claims do not

23   relate to "terms or credit" or "servicing" of mortgages.

24       Each of Plaintiff's claims against Defendants are dismissed with prejudice as

25   preempted by HOLA.  Therefore, the Court does not reach Defendants' alternative

26   arguments based on failure to tender and failure to state a claim.

27   //

28   //

**4.      The Motion to Strike is Moot**

Because the claims against Defendants are dismissed with prejudice, the motion to strike the claim for punitive damages is MOOT.

**IT IS SO ORDERED.**

Dated: September 13, 2011

_Elizabeth D. Laporte_

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
For the Northern District of California